**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
Orlando Division

Case No.: _____

WYNDHAM VACATION OWNERSHIP, INC. a Delaware corporation; WYNDHAM VACATION RESORTS, INC., a Delaware corporation, WYNDHAM RESORT DEVELOPMENT CORPORATION; a Oregon Corporation; SHELL VACATIONS, LLC, an Arizona limited liability company; SVC-WEST, LLC, a California limited liability company; SVC-AMERICANA, LLC, an Arizona limited liability company; and SVC-HAWAII, LLC, a Hawaii limited liability company,

      Plaintiffs,

v.

SQUARE ONE DEVELOPMENT GROUP, INC. a Missouri corporation; and TS ELIMINATION, LLC, a Nevada limited liability company,

      Defendants.

## COMPLAINT

Plaintiffs Wyndham Vacation Ownership, Inc. ("WVO"); Wyndham Vacation Resorts, Inc. ("WVR"); Wyndham Resort Development Corporation ("WRDC"); Shell Vacations, LLC ("SV"); SVC-West, LLC ("SVC-West"); SVC-Americana, LLC ("SVC-Americana"); and SVC-Hawaii, LLC ("SVC-Hawaii") (collectively, "Wyndham"), through counsel and pursuant to the Federal Rules of Civil Procedure, hereby sue Defendants Square One Development Group, Inc. ("Square One") and TS Elimination, LLC ("TS Elimination") (Square One and TS Elimination, collectively, "Defendants"), and state:

## PARTIES, JURISDICTION, AND VENUE

## The Parties

1.      Plaintiff Wyndham Vacation Ownership, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

2.      Plaintiff Wyndham Vacation Resorts, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

3.      Plaintiff Wyndham Resort Development Corporation is a corporation organized and existing under the laws of the State of Oregon with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

4.      Plaintiff Shell Vacations LLC is a limited liability company organized and existing under the laws of the state of Arizona with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

5.      Plaintiff SVC-West, LLC is a limited liability company organized and existing under the laws of the state of California with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

6.      Plaintiff SVC-Americana, LLC is a limited liability company organized and existing under the laws of the state of Arizona with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

7.      Plaintiff SVC-Hawaii, LLC is a limited liability company organized and existing under the laws of the state of Hawaii with a principal place of business located at 6277 Sea Harbor Drive, Orlando, Florida 32821.

8.      Square One is a corporation organized and existing under the laws of the State of Missouri with a principal place of business located at 1610 Des Peres Road, Suite 150 Saint Louis, Missouri 63131.

9.      TS Elimination is a limited liability company organized and existing under the laws of the State of Nevada with a principal place of business located at 6130 Elton Ave, Las Vegas, NV 89107.

## Subject Matter Jurisdiction

10.      This Court has subject matter jurisdiction over the claims sounding in the Lanham Act alleged herein pursuant to 28 U.S.C. §§ 1331 and 1338.   This Court has subject matter jurisdiction over the claims sounding in state law alleged herein pursuant to 28 U.S.C. § 1367 as the state law claims are so related to the Lanham Act claims that they form part of the same case or controversy.

## Personal Jurisdiction

11.      This Court has personal jurisdiction over the Defendants for the following reasons:

a.      their actions, as more fully described herein below, are directed at consumers across the country, including consumers in the state of Florida. All Defendants operate websites that are freely accessible from Florida and target consumers in the State of Florida, which involves, *inter* alia, the repeated transmission of files over the Internet in, to, and out of the State of Florida;

b.      the cause false demand letters to be directed to Wyndham in the State of Florida and interfered with Wyndham's business in the State of Florida, all

of which involves the repeated use of the wires and mails to transmit correspondence and other items into the State of Florida;

c.     at least some of the Timeshare Contracts and Timeshare Owners at issue in this civil action were entered into in Florida or are Florida residents;

d.     committing acts and torts which caused injury to Plaintiffs in Florida; and

e.     conducting 'road shows' and other marketing in the State of Florida that are targeted to Florida residents.

## Venue

12.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391 because, as described herein, a substantial part of the events giving rise to Plaintiffs' claims occurred in Florida, because the Defendants ultimately harm the consuming public and Wyndham in Florida, and Defendants' conduct giving rise to the claims set forth herein occurred in this District.

## Conditions Precedent, Attorneys' Fees

13.     All conditions precedent to the bringing and maintenance of this action have been performed, were waived, would be futile if attempted, or have otherwise been satisfied or occurred.

14.     Wyndham has retained the services of the undersigned lawyers to represent it in this matter and have obligated themselves to pay reasonable attorneys' fees, which fees are recoverable against Defendants pursuant to 15 U.S.C. § 1117 and the Florida Deceptive and Unfair Trade Practices Act, and other statutes, as set forth in greater detail herein.

## BACKGROUND FACTS

15.     This action is based on the simple premise that it is inherently false and misleading for a non-party to a contract to advertise and sell any ability to release one of the parties to that

contract from the obligations of that contract, or to otherwise legally cancel or terminate that contract without any consequences.

16. Wyndham is a timeshare resort developer. Resort developers, like Wyndham, develop vacation properties where the developer can divide a single vacation unit between 52 owners, with each owner purchasing a fractional interest of the whole for a specified share of the total price, i.e. deeded ownership. Developers, like Wyndham, also sell membership interests to consumers in the form of points, which are exchanged for use at Wyndham properties. Wyndham owners may also belong to an exchange program, which allows owners to use their ownership at Wyndham resorts to stay at additional properties that Wyndham does not own, further expanding consumer's choices.

17. Timeshare ownership is a contractual relationship. Wyndham has valid and binding contracts (the "Timeshare Contracts") with identifiable individuals who purchased timeshare interests from Wyndham (the "Wyndham Owners"). The Timeshare Contracts control the benefits and obligations of timeshare ownership between the Wyndham Owners and Wyndham.

18. Recently, a nefarious cottage industry known as "timeshare exit" has sprouted. This industry preys upon unsuspecting timeshare owners, including Wyndham Owners, inducing them into breaching their binding Timeshare Contracts, causing harm to both the Wyndham Owners and Wyndham. This scheme is not limited to just Wyndham Owners and Wyndham, and has targeted the timeshare industry as a whole.

19. Timeshare exit businesses typically demand exorbitant up-front payment from consumers, and then do little or nothing on behalf of the consumer, often leaving the consumer with damaged or ruined credit. To make matters worse, many consumers that may have an issue with their timeshare product could have the issue resolved by simply contacting the timeshare

developer, such as Wyndham, directly or utilizing one of the many programs created by the timeshare industry for consumers, such as the Wyndham Ovation® program.

20.     Defendants are not parties to the Timeshare Contracts.  Yet, despite this, they falsely advertise a "cancellation," "exit," or "transfer" service that purports to "legally" or "painlessly" release or "exit" Wyndham Owners from the obligations of their Timeshare Contracts. The following is a representative advertisement by Defendant Square One for illustrative purposes:



# Get Answers Today.

Schedule a free consultation today if you are ready to eliminate your timeshare obligation safely, legitimately, legally, and permanently. Square One Group's unparalleled timeshare elimination process will rid you of your unwanted timeshare.

**We stand by our 100% money back guarantee – we will get you out or give you a complete refund.**

21.     TS Elimination similarly advertises that the timeshares have no value to their owners and uses other, similar advertisements.

22.     Defendants guarantee results – that is, Defendants guarantee that Wyndham Owners will be legally, permanently, and safely exited from their Timeshare Contracts if they use Defendants' services.

23.     In reality, Defendants do nothing other than collect substantial up-front fees from unwitting Wyndham Owners and then refer those Wyndham Owners to other, unnamed co-

conspiring third-parties, who take a referral fee from Defendants.  Those unnamed co-conspiring third-parties likewise do nothing for the Wyndham Owners.

24.     Upon being retained, Defendants instruct, deceive, induce, or persuade Wyndham Owners to stop fulfilling their contractual obligations under the Timeshare Contracts, as a means of facilitating the "exit", "cancellation", or "transfer."  Even if they state otherwise in writing, Defendants instruct, deceive, induce, or persuade Wyndham Owners to stop making payments under the Timeshare Contracts.  There are three purposes to doing this:

a.     it helps Defendants justify their fees by claiming that the Wyndham Owner is saving money by not making payments to Wyndham as required by the Timeshare Contracts;

b.     related to paragraph 10(a), *supra*, it diverts the funds of the Timeshare Owners from Wyndham to Defendants, causing Wyndham damages; and

c.     it ensures a Wyndham Owner will go into default, and foreclosure, on their Timeshare Contract, allowing Defendants to claim success at "exiting" a Wyndham Owner from their Timeshare Contract, a false and misleading characterization which harms the Wyndham Owner.

25.     Defendants do not disclose to the Wyndham Owners the consequences of ceasing payments, or that their "cancellation" and "exit" will actually result in an unlawful breach of the Timeshare Contracts due to non-payment, leading to a non-judicial foreclosure of their timeshare interests.

26.     Nevertheless, after the Timeshare Contracts are foreclosed, Defendants then misrepresent to these former Wyndham Owners that they were successful in "cancelling" or "exiting" their Timeshare Contracts.

27.     Alternatively, Defendants may negotiate a surrender or deed-in-lieu on behalf of Wyndham Owners, while failing to inform the Wyndham Owners that doing so also has substantial negative impacts on the credit and finances of Wyndham Owners.

28.     Cancellation or rescission of a contract is very different in nature than a breach and termination.  But Defendants advertise the former only to mislead Wyndham Owners into the latter.

29.     Each Wyndham Owner pays Defendants thousands of dollars to essentially breach a Timeshare Contract that the Wyndham Owner could have breached on his or her own, for free. Defendants' "cancellation" services are therefore illusory, and the Wyndham Owners often do not realize the scam until after the damage is done when their credit rating is badly hurt due to the default and/or foreclosure.

30.     Under the Florida Statutes, the "cancellation" of a Timeshare Contract is a specific, non-waivable rescission right held by Wyndham Owners that can be exercised within a certain time period following the execution of a Timeshare Contract.  *See* Fla. Stat. § 721.10.  It is not a service that can be advertised, sold, or provided in commerce.

31.     Defendants have caused Wyndham substantial damages.

## THE FALSE AND/OR MISLEADING ADVERTISEMENTS AND PROMOTIONS

32.     Square One falsely claims that they are "watchdogs" for American Resort Development Association ("ARDA"), an industry trade association that promotes the growth and development of the timeshare industry in a variety of ways, and even misrepresents to consumers that ARDA had flagged their names.  Square One does not have any affiliation with or work on behalf of ARDA.  ARDA issued a Consumer Alert noting that Square One "uses <u>false and misleading information</u> to pressure consumers into purchasing times share exit" services and that

Square One is "in **NO WAY** affiliated with ARDA."  A copy of the notice is annexed hereto as Exhibit 1.

33.     Square one attempts to pressure consumers by claiming that they must sign up with Square One that day to take advantage of the ARDA "watchdogs."

34.     Square One also falsely represents that as a result of IRS regulations, consumers' children will not be able to sell their timeshare upon their death.  Square One also makes false statements regarding the rate at which maintenance fees will increase, often claiming that they confirmed the number with ARDA, when it does not.

35.     Square One claims in its mailing that "[w]e do not buy, sell, rent or list timeshares." A copy of the mailing is annexed hereto as Exhibit 2.  This is false and intended to deceive consumers because the contract that the consumer ultimately signs with Square One allows Square One to transfer the timeshare interest:

> Square One Development Group, Inc. (Square One) is an independent transfer company that contracts to transfer weeks or points from various resorts around the world.  Square One may also contract with various third party title transfer companies, closing companies and attorneys to liquidate your ownership.  Square One is not affiliated with your resort.
>
> ***This document allows Square One and/or square One's assignee the exclusive right to transfer the property out of Owner(s) names(s) by any legal means necessary***.  Owner guarantees that they do not currently have the property listed with any broker for sale.  This property shall be granted, conveyed or assigned by Square One and/or Square One's assignee in such a manner as to pass legal title to the Grantee or Assignee.

A copy of the contract is annexed hereto as Exhibit 3 (emphasis added).

36.     Square One owns, operates, controls, and/or is otherwise responsible for the content of www.squareonehelp.com.

37.     The content of www.squareonehelp.com includes or has included the following statements:

i.      "When enough is enough, we step in with our industry leading
        timeshare specialists, legal team, and quality assurance personnel
        and take the reins." (www.squareonehelp.com)

ii.     "No more being bullied by the big timeshare conglomerates. We
        will take the proper steps to legally and permanently relieve you
        and your family of your timeshare's financial liability, freeing you
        and your family from decades of fees and headaches."
        (www.squareonehelp.com)

iii.    "Square One Group's unparalleled timeshare elimination process
        will rid you of your unwanted timeshare."
        (www.squareonehelp.com)

iv.     "The resorts are shielded with layers of legal protection created by
        their attorneys and lobbyists that makes it feel virtually impossible
        to get rid of your timeshare without expert help and
        representation." (www.squareonehelp.com)

v.      "Upon receiving all necessary documents, we have a full picture of
        your ownership situation, allowing us to identify the best exit
        strategy for you. We put together a team of exclusive network
        partners and attorneys who will transfer ownership or negotiate to
        get you out of your timeshare. Our approach is unmatched and has
        allowed us to obtain exits from over one thousand different
        resorts."  (www.squareonehelp.com/services/)

vi.    "The exit timeline will depend on a variety of factors, but typically ranges between 3 to 6 months. We are always searching the market for new exit opportunities and will adjust your case strategy if a more expedited exit path is identified. We hold ourselves and our partners accountable for finding you the quickest exit possible. Square One Group guarantees you will be exited from ownership safely, legally, and forever, or you receive your money back."

(www.squareonehelp.com/services/)

vii.   "We stand behind our 100% money back guarantee."

(www.squareonehelp.com/services/)

38.    In addition, according to the Better Business Bureau website, Square One also previously falsely advertised that it had an A+ BBB Rating, and the BBB was required to send a cease and desist letter to stop Square One's false advertising. https://www.bbb.org/us/mo/des-peres/profile/timeshare-cancellation/square-one-development-group-inc-0734-1000010028/details#Alert.

39.    TS Elimination owns, operates, controls, and/or is otherwise responsible for the content of https://tselimination.com/.

40.    The content of https://tselimination.com/ includes or has included the following statements:

i.    "We help timeshare owners eliminate their timeshare obligation, permanently, completely and forever."

(https://tselimination.com/about-us/)

ii.      "Our timeshare elimination solution has a written 100%
         performance guarantee. We will get you out of your timeshare, or
         give you 100% of your money back." (https://tselimination.com/)

iii.     "Depending on your situation, some eliminations go fast, and some
         take longer. If your timeshare is free and clear with no mortgage,
         then the process could take 3 to 9 months (in some cases longer).
         Speak to your advisor about the time, and what delays the resorts
         have put in place to prevent timeshare owners from departing their
         ownership. If you have a mortgage or past due maintenance fee,
         the process takes more time. Read your agreement, so you know
         how you are protected with TS Elimination."
         (https://tselimination.com/faq/)

iv.      "The value of a timeshare is determined by the ability to find
         someone to pay for it. If you cannot find a buyer, then the value is
         zero. In addition, that zero value timeshare, has a bill attached to it
         every year called a maintenance fee bill. So you could say, that the
         zero value timeshare has negative value, and that negative value
         increases as your maintenance fees increase, year…. after year….
         after year. Financial experts refer to this as a liability. This is the
         unfortunate reality of timeshare ownership, you own a liability."
         (https://tselimination.com/faq/)

v.       "Yes, we have a solution for timeshare owners that have a
         mortgage balance." (https://tselimination.com/faq/)

vi.    "Our timeshare experts give free consultation on how to get rid of your timeshare legally." ([https://tselimination.com/](https://tselimination.com/))

vii.    "TS Elimination is the nation's premier timeshare fee elimination company. We have helped numerous people cancel their timeshare contract smoothly." ([https://tselimination.com/](https://tselimination.com/))

viii.    "Let us help you terminate your timeshare contract and get out of your timeshare. Contact us today and let our experts assist you through the simple process of eliminating your timeshare." ([https://tselimination.com/](https://tselimination.com/))

41.    The advertisements in paragraphs 20 and 32 through 38 may be collectively referred to hereinafter as the "Square One False and Misleading Advertisements".

42.    The advertisements in paragraphs 39 and 40 may be collectively referred to hereinafter as the "TS Eliminations False and Misleading Advertisements".

## DEFENDANTS KNOW THE ADVERTISEMENTS ARE FALSE AND/OR MISLEADING

43.    After fraudulently inducing Wyndham Owners to retain Square One, including by making misrepresentations regarding the existence or cost of Ovation, Square One employees will call Ovation pretending to be the Wyndham Owner.

44.    Moreover, Square One has sued the entities to which they forwarded numerous Wyndham Owners for breach of contract, fraud, and other causes of action for failure to perform the 'services' that Square One promised to Wyndham Owners in the Square One False and Misleading Advertisements.  A copy of this lawsuit is annexed hereto as Exhibit 4.  Thus, Square One knows that the Square One False and Misleading Advertisements are false and/or misleading.

45.     Likewise, TS Eliminations has sued the entities to which they forwarded numerous Wyndham Owners for breach of contract, fraud, and other causes of action for failure to perform the 'services' that TS Eliminations promised to Wyndham Owners in the TS Eliminations False and Misleading Advertisements.  A copy of this lawsuit is annexed hereto as Exhibit 5.  Thus, TS Eliminations knows that the Square One False and Misleading Advertisements are false and/or misleading.

46.     The Square One False and Misleading Advertisements and the TS Eliminations False and Misleading Advertisements are not puffery.  Thousands of consumers have fallen prey to Defendants' false and/or deceptively misleading advertisements and have retained Defendants to render Defendants' illusory services.  Consumers have paid Defendants thousands or tens of thousands of dollars each for Defendants' 'guaranteed', 'safe', 'proven', and 'effective' 'process', only to have their timeshare interests terminated, cancelled, defaulted, and/or foreclosed for non-payment.  No rational consumer would pay such sums of monies to a third-party to achieve the same results (timeshare termination, cancellation, defaults, and/or foreclosures for non-payment) they could achieve on their own through the simple act of not paying.  Many timeshare owners, including Wyndham Owners, who pay Defendants for their illusory services ultimately suffer the same fate as any other consumer who simply elects not to make payments on their timeshare contracts; the only difference between many consumers who simply stop paying, and those who retain Defendants' illusory services, is that the latter group of consumers lose additional thousands or tens of thousands of dollars to Defendants on top of what they lose by defaulting on their payment obligations.

47.     Defendants' false and misleading advertisements cause direct harm to Wyndham. The False and Misleading Advertisements make false and/or deceptively misleading statements

about Defendants' products and services, and Wyndham's products and services. Defendants exist for the sole purpose of interfering in Wyndham's contracts with the Wyndham Owners. Because Wyndham Owners can be either a customer of Defendants, or a customer of Wyndham, but not both, they are competitors and there is a direct relationship between Defendants false and/or deceptively misleading advertising and harm to Wyndham in that the False and Misleading Advertisements are solely designed to induce Wyndham Owners into retaining Defendants, who then immediately instruct those Wyndham Owners to cease making payments to Wyndham.

## WYNDHAM'S RIGHT TO INJUNCTIVE RELIEF

48.     Defendants' solicitation of Wyndham Owners using false and misleading advertising and their subsequent instruction to and/or persuasion of the Wyndham Owners to stop making payments on the Timeshare Contracts, including all mortgage, maintenance, and tax payments associated with their timeshares, regardless of whether any valid legal basis exists for the cancellation with Plaintiffs, is harming Plaintiffs.

49.     Defendants continue to engage and intend to further engage in the unlawful conduct described above.

50.     Defendants' actions present an immediate threat of irreparable harm to Plaintiffs, and Plaintiffs will suffer irreparable harm if Defendants, and their agents, affiliated companies or entities, representatives and employees, are not enjoined from this conduct.

51.     The threat of irreparable harm is continuing because Defendants currently engage in an ongoing business whereby they solicit Wyndham Owners using the false and misleading advertising outlined above; and then convince the Wyndham Owners to immediately stop paying.

52.     Non-defaulting Wyndham Owners are also damaged because the non-payment of taxes and maintenance fees by the defaulting Wyndham Owners force the non-defaulting

Wyndham Owners to incur higher fees/payments as a result of the deficiencies caused by Defendants' ongoing actions.

53.     Plaintiffs will have imminently thousands of dollars in delinquent mortgage, maintenance, and tax payments owed to them and will be forced to expend monies foreclosing on the timeshares to recoup these monies to no end as Defendants refuse to cease and desist from this tortious conduct.

54.     Plaintiffs have no adequate remedy at law as damages will not address the harm Plaintiffs will suffer if Defendants are permitted to continue with this tortious conduct.

55.     The injury and potential harm caused by Defendants' intentional inference with Plaintiffs' relationships outweigh the harm, if any, that an injunction would cause to Defendants.

56.     The issuance of the requested injunction will serve the public interest by protecting Plaintiffs' legitimate business interests and the interests of the Wyndham Owners, and by restraining the unlawful, disruptive and tortious actions committed by Defendants.

57.     Moreover, Wyndham has a right to injunctive relief under both the Lanham Act and the Florida Deceptive and Unfair Trade Practices Act.

**COUNT I**
**Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)**
(against Square One)

58.     Wyndham adopts and realleges paragraphs 1-57 above as if fully set forth herein.

59.     This is an action for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).  More specifically, this is an action for Square One's false and misleading advertisements regarding Square One's own products and services.

60.     Square One willfully, deliberately, and egregiously made false or misleading statements of fact in their commercial advertisements and intended to mislead consumers,

specifically, the Square One False and Misleading Advertisements.   These statements, incorporated herein, were literally false, either on their face or by necessary implication, as set forth herein, or materially misleading.

61.     The Square One False and Misleading Advertisements described above were commercial speech made by a defendant acting in competition to Wyndham by trying to interfere with Wyndham's business relationships for Square One's own financial gain, for the purpose of influencing consumers to retain Square One's services, and were disseminated sufficiently to the timeshare owning public to constitute advertising or promotion within the timeshare industry.

62.     The Square One False and Misleading Advertisements either deceived or had the capacity to deceive a substantial segment of the consuming public.

63.     Square One's deception is material, in that it is likely to influence the consumers' decisions whether to retain Defendants' services or to cease making payments to Wyndham or utilize the Ovation® Program, which is available to assist Wyndham Owners who may wish to legitimately terminate their timeshare ownership with Wyndham.

64.     Square One deceives the consuming public by knowingly concealing the existence of the Ovation® Program and concealing the legitimate options available to Wyndham Owners, and instead tell consumers that Wyndham will do nothing to help consumers end their timeshare ownership.

65.     Square One's advertised services affect interstate commerce.

66.     Square One is operating as a competitor to Wyndham.   Once a Wyndham Owner enters into an agreement with Square One, the sole purpose of that agreement is to cause that Wyndham Owner to withdraw his or her business from Wyndham, effectively converting that individual from a Wyndham Owner to a customer of the Defendant.

67.     Wyndham has been and continues to be injured as a result of Defendants' false and misleading statements.

68.     Pursuant to 15 U.S.C. § 1117, Wyndham is entitled to recover (i) its actual damages sustained as a result of the false advertising, (ii) Defendants' profits resulting from their false advertising to Wyndham Owners, and (iii) the costs of the action.

69.     Pursuant to 15 U.S.C. § 1116, Wyndham seeks an injunction upon such terms as the Court may deem reasonable, to prevent further violations by Defendants of 15 U.S.C. 1125(a).

WHEREFORE, Plaintiffs respectfully request the Court enter final judgment in their favor and against Square One for damages, corrective advertising, and disgorgement of Square One's profits, together with interest thereon, an award of court costs, a determination that the instant civil action is an exceptional case and awarding Plaintiffs their attorneys' fees, entry of injunctive relief, and for such other and further relief as the Court deems appropriate. Plaintiffs demand a permanent injunction be entered against Square One, as well as their agents, representatives, employees, affiliates, prohibiting Square One from publishing false and misleading statements in advertising, including but not limited to their websites or in any other electronic or print media or materials, advertising any ability to cancel or end Wyndham Owners' timeshare interests.

## COUNT II
## Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)
### (against TS Elimination)

70.     Wyndham adopts and realleges paragraphs 1-57 above as if fully set forth herein.

71.     This is an action for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).  More specifically, this is an action for TS Elimination's false and misleading advertisements regarding TS Elimination's own products and services.

72.     TS Elimination willfully, deliberately, and egregiously made false or misleading statements of fact in their commercial advertisements and intended to mislead consumers, specifically, the TS Elimination False and Misleading Advertisements.   These statements, incorporated herein, were literally false, either on their face or by necessary implication, as set forth herein, or materially misleading.

73.     The TS Elimination False and Misleading Advertisements described above were commercial speech made by a defendant acting in competition to Wyndham by trying to interfere with Wyndham's business relationships for TS Elimination's own financial gain, for the purpose of influencing consumers to retain TS Elimination's services, and were disseminated sufficiently to the timeshare owning public to constitute advertising or promotion within the timeshare industry.

74.     The TS Elimination False and Misleading Advertisements either deceived or had the capacity to deceive a substantial segment of the consuming public.

75.     TS Elimination's deception is material, in that it is likely to influence the consumers' decisions whether to retain Defendants' services or to cease making payments to Wyndham or utilize the Ovation® Program, which is available to assist Wyndham Owners who may wish to legitimately terminate their timeshare ownership with Wyndham.

76.     TS Elimination deceives the consuming public by knowingly concealing the existence of the Ovation® Program and concealing the legitimate options available to Wyndham Owners, and instead tell consumers that Wyndham will do nothing to help consumers end their timeshare ownership.

77.     TS Elimination's advertised services affect interstate commerce.

78.     TS Elimination is operating as a competitor to Wyndham.  Once a Wyndham Owner enters into an agreement with TS Elimination, the sole purpose of that agreement is to cause that Wyndham Owner to withdraw his or her business from Wyndham, effectively converting that individual from a Wyndham Owner to a customer of the Defendant.

79.     Wyndham has been and continues to be injured as a result of Defendants' false and misleading statements.

80.     Pursuant to 15 U.S.C. § 1117, Wyndham is entitled to recover (i) its actual damages sustained as a result of the false advertising, (ii) Defendants' profits resulting from their false advertising to Wyndham Owners, and (iii) the costs of the action.

81.     Pursuant to 15 U.S.C. § 1116, Wyndham seeks an injunction upon such terms as the Court may deem reasonable, to prevent further violations by Defendants of 15 U.S.C. 1125(a). WHEREFORE, Plaintiffs respectfully request the Court enter final judgment in their favor and against TS Elimination for damages, corrective advertising, and disgorgement of TS Elimination's profits, together with interest thereon, an award of court costs, a determination that the instant civil action is an exceptional case and awarding Plaintiffs their attorneys' fees, entry of injunctive relief, and for such other and further relief as the Court deems appropriate. Plaintiffs demand a permanent injunction be entered against TS Elimination, as well as their agents, representatives, employees, affiliates, prohibiting TS Elimination from publishing false and misleading statements in advertising, including but not limited to their websites or in any other electronic or print media or materials, advertising any ability to cancel or end Wyndham Owners' timeshare interests.

**COUNT III**
**<u>Violations of Florida's Deceptive and Unfair Trade Practices Act</u>**
(against Square One)

82.     Wyndham adopts and realleges paragraphs 1-57 above as if fully set forth herein

83.     This is a cause of action for damages and permanent injunctive relief under Section 501.211, Fla. Stat.

84.     Wyndham is a legitimate business enterprise under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

85.     Wyndham Owners are consumers for purposes of FDUTPA.

86.     Square One is engaged in trade or commerce as those terms are defined by FDUTPA.

87.     Square One is engaged in deceptive and unfair practices, including luring Wyndham Owners into procuring Square One's illusory services with false advertising and using misrepresentations to convince Wyndham consumers to pay substantial fees to "cancel" their contracts with Wyndham, when, in many instances, a lawful termination is only available to consumers directly from Wyndham, a party to the Timeshare Contracts, through the Ovation® Program or otherwise.

88.     Section 501.211(1), Fla. Stat., "permits a claim for injunctive relief by 'anyone aggrieved' by an unfair or deceptive act, which has occurred, is now occurring, or is likely to occur in the future." *Wyndham Vacation Resorts, Inc. v. Timeshare Direct, Inc.*, 123 So.3d 1149, 1152 (Fla. 5th DCA 2012).

89.     Under Section 501.211(1), Fla. Stat., "anyone aggrieved" includes a broader class of complainants than merely consumers; the scope of the injunctive remedy is also greater than the actual damage remedy under § 510.211(2), Fla. Stat. *Id.*; *see also Kinger v. Weekly World News, Inc.*, 747 F. Supp. 1477, 1480 (S.D. Fla. 1990).

90.     Wyndham is a party aggrieved by Defendants' violation of FDUTPA, Section 501.204(1), Fla. Stat.

91.     As a result of Square One's actions, Wyndham has suffered financial loss.

92.     Wyndham's losses will increase unless Square One is permanently enjoined from continuing their deceptive and unfair business practices.

93.     Wyndham is entitled to recover its attorney's fees and costs from Square One under Sections 501.2105 and 501.211, Florida Statutes.

**COUNT IV**
**Violations of Florida's Deceptive and Unfair Trade Practices Act**
(against TS Elimination)

94.     Wyndham adopts and realleges paragraphs 1-57 above as if fully set forth herein

95.     This is a cause of action for damages and permanent injunctive relief under Section 501.211, Fla. Stat.

96.     Wyndham is a legitimate business enterprise under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

97.     Wyndham Owners are consumers for purposes of FDUTPA.

98.     TS Elimination is engaged in trade or commerce as those terms are defined by FDUTPA.

99.     TS Elimination is engaged in deceptive and unfair practices, including luring Wyndham Owners into procuring TS Elimination's illusory services with false advertising and using misrepresentations to convince Wyndham consumers to pay substantial fees to "cancel" their contracts with Wyndham, when, in many instances, a lawful termination is only available to consumers directly from Wyndham, a party to the Timeshare Contracts, through the Ovation® Program or otherwise.

100.    Section 501.211(1), Fla. Stat., "permits a claim for injunctive relief by 'anyone aggrieved' by an unfair or deceptive act, which has occurred, is now occurring, or is likely to occur

in the future." *Wyndham Vacation Resorts, Inc. v. Timeshare Direct, Inc.*, 123 So.3d 1149, 1152 (Fla. 5th DCA 2012).

101.    Under Section 501.211(1), Fla. Stat., "anyone aggrieved" includes a broader class of complainants than merely consumers; the scope of the injunctive remedy is also greater than the actual damage remedy under § 510.211(2), Fla. Stat. *Id.*; *see also Kinger v. Weekly World News, Inc.*, 747 F. Supp. 1477, 1480 (S.D. Fla. 1990).

102.    Wyndham is a party aggrieved by Defendants' violation of FDUTPA, Section 501.204(1), Fla. Stat.

103.    As a result of TS Elimination's actions, Wyndham has suffered financial loss.

104.    Wyndham's losses will increase unless TS Elimination is permanently enjoined from continuing its deceptive and unfair business practices.

105.    Wyndham is entitled to recover its attorney's fees and costs from TS Eliminations under Sections 501.2105 and 501.211, Florida Statutes.

## PRAYER FOR RELIEF

WHEREFORE, Wyndham requests the Court enter Final Judgment in its favor and against the Defendants, individually, as follows:

a)  monetary damages against Square One as to Count I of the Complaint;

b)  monetary damages against TS Elimination as to Count II of the Complaint;

c)  disgorgement of Square One's profits as to Count I of the Complaint;

d)  disgorgement of TS Elimination's profits as to Count II of the Complaint;

e)  permanent injunctive relief against Square One as to Counts I and III of the Complaint;

f)  permanent injunctive relief against TS Elimination as to Counts II and IV of the Complaint;

g)  a determination that this is an extraordinary case under the Lanham Act;

h)  punitive damages against Square One;

i)  punitive damages against TS Elimination;

j)  an award of attorneys' fees against Square One as to Counts I and III of the Complaint;

k)  an award of attorneys' fees against TS Elimination as to Counts II and IV of the Complaint; and

l)  for such other and further relief as the Court deems proper.

Dated September 30, 2019.

Respectfully submitted,

*/s/   Alfred J. Bennington, Jr.*

**ALFRED J. BENNINGTON, JR., ESQ.**
Florida Bar No. 0404985
bbennington@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
grubin@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile: (407) 849-7255

**DANIEL J. BARSKY, ESQ.**
Florida Bar No. 25713
dbarsky@shutts.com
**SHUTTS & BOWEN LLP**
200 South Biscayne Boulevard, Suite 4100
Miami, Florida 33131
Telephone: (561) 650-8518
Facsimile: (561) 822-5527
*Counsel for Plaintiffs*
